UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

WILLIAM AHRENS and PENELOPE AHRENS,
*individually and on behalf of all others similarly situated,*

                            Plaintiffs,

                  -v-

CTI BIOPHARMA CORP., JAMES A. BIANCO, LOUIS
A. BIANCO, BRUCE J. SEELY, JACK W. SINGER,
PHILLIP M. NUDELMAN, JOHN H. BAUER, KAREN
IGNAGNI, RICHARD L. LOVE, MARY O.
MUNDINGER, FREDERICK W. TELLING, and REED
V. TUCKSON,

                          Defendants.

------------------------------------------------------------------------X

16 Civ. 1044 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/19/16

**PAUL A. ENGELMAYER, District Judge:**

      In February 2016, plaintiffs William Ahrens and Penelope Ahrens brought this putative

class action, alleging violations of the federal securities laws by defendant CTI BioPharma Corp.

("CTI" or the "Company"), as well as various individual officers and directors ("Individual

Defendants") (collectively with CTI, "defendants"). Defendants have now filed a motion to

transfer this case to the Western District of Washington, on the grounds that the relevant factors

under 28 U.S.C. § 1404(a) overwhelmingly favor such transfer, and indeed, that a parallel

lawsuit against some of the same defendants (CTI and James and Louis Bianco) is already

pending in that District. Neither plaintiffs nor any of the movants that have sought to be named

as lead plaintiffs in this case have opposed the motion to transfer. For the reasons that follow,

the motion to transfer is granted.

## I.   Background

On February 10, 2016, plaintiffs filed the Complaint.  Dkt. 1 ("Compl.").  It alleges that defendants made false or misleading statements, or failed to disclose information, principally concerning CTI's development and prospects of a cancer drug, pacritinib, and the potential impact of the development of that drug on CTI's business, operations, and prospects.  *See* Compl. ¶ 8.  CTI is a biopharmaceutical company that develops clinical treatment and drugs for various cancers, and pacritinib was one of the Company's most advanced pipeline products.  *Id.* ¶ 7.  On February 8 and 9, 2016, CTI issued press releases announcing that the FDA had placed a partial, and then a full, hold on clinical trials of the drug.  *Id.* ¶¶ 4, 6.  Following those announcements, the Company's stock price dropped sharply.  *Id.* ¶¶ 5, 7.

The Complaint alleges that between March 3, 2014 and November 5, 2015, the defendants made false or misleading statements relating to pacritinib and its prospects, including for regulatory approval.  These false statements were made, plaintiffs allege, in CTI's annual and quarterly 10-K and 10-Q reports, press releases, and a Prospectus Supplement issued in connection with a previously filed Registration Statement concerning a 10,000,000 share stock offering,[1] all of which were filed with the U.S. Securities and Exchange Commission ("SEC").  *Id.* ¶¶ 32–46.  The Complaint alleges that these statements violated Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k & 77o, and Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78(t)(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  Compl. ¶ 10.  The Complaint further alleges that CTI's February 2016 press releases announcing the FDA's hold

---

[1] The stock offering was priced on September 24, 2014.  Compl. ¶ 3.  Company securities were traded on the Nasdaq Stock Market ("NASDAQ").  *Id.* ¶ 56.

on clinical trials operated as corrective disclosures of the earlier false or misleading statements.
*See id.* ¶¶ 1, 48–52.

On April 11, 2016, six entities or individuals, or groups thereof, moved to be appointed lead plaintiffs, and to have their chosen counsel appointed as lead counsel. Dkts. 5, 8, 11, 14, 17, 23.[2] On May 9, 2016, those motions became fully briefed.

On May 2, 2016, while those motions for appointment as lead plaintiffs and counsel were pending, defendants filed a motion to transfer this case to the Western District of Washington, Dkt. 35, along with a supporting memorandum of law, Dkt. 36 ("Def. Br."), and a declaration of James A. Bianco, with exhibits attached, Dkt. 37 ("Bianco Decl."). On May 4, 2016, the Court issued an order directing plaintiffs to file their consent or opposition, if any, and lead plaintiff movants to file their support or opposition, if any, to the motion to transfer by May 11, 2016, and directed defendants to file a reply to any opposition by May 16, 2016. Dkt. 39. To date, one movant, DAFNA LifeScience, LP and DAFNA LifeScience Select, LP ("DAFNA"), submitted a response in support of the motion to transfer, Dkts. 38, 48, and two movants, Medical Opportunities Fund and James and Rebecca Lessard, submitted responses indicating that they do not oppose (or take no position on) the motion to transfer, Dkts. 45, 46. Thus, neither plaintiffs nor any movants have indicated opposition to defendants' motion.

In addition to the instant suit, there is also a suit pending in the Western District of Washington asserting identical substantive allegations against CTI and James and Louis Bianco. *See McGlothin v. CTI BioPharma Corp.*, 16 Civ. 216 (W.D. Wash.) (filed Feb. 12, 2016).

---

[2] One movant later withdrew from consideration. Dkt. 47.

## II.     Legal Standards Governing Transfer Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . or to which all parties have consented."

In general, § 1404(a) gives district courts wide latitude to decide whether to transfer venue. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011).  In deciding a motion to transfer, a court should first inquire "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).

Assessing whether transfer is a valid exercise of discretion ordinarily requires the court to balance various factors, including:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *4; *see also Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

## III.    Analysis

Plaintiffs' claims could have been brought in the Western District of Washington, and the relevant factors under § 1404(a) overwhelmingly support transfer of this action to that District.

4

Plaintiffs' claims could have been brought in the Western District of Washington. Section 27 of the Exchange Act provides that a civil suit brought under the Exchange Act "may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business," or "wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa(a); *SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 453 (S.D.N.Y. 2003) (noting that the "any act or transaction" language, though limited to criminal proceedings in the text of the statute, has been held to apply to civil cases (citing *Grossman v. Young*, 70 F. Supp. 970 (S.D.N.Y. 1947)).[3] "Courts have interpreted this ['any act or transaction constituting the violation'] language to mean that the commission of any non-trivial act in the district establishes venue for an Exchange Act claim, even if this act does not go to the core of the alleged violation." *Ato Ram, II, Ltd. v. SMC Multimedia Corp.*, No. 03 Civ. 5569 (HB), 2004 WL 744792, at *3 (S.D.N.Y. Apr. 7, 2004).

Here, CTI is incorporated under the laws of the State of Washington, and maintains its headquarters, principal place of business, and sole United States office in Seattle, Washington. Bianco Decl. ¶¶ 5, 9.  In addition, CTI's "financial statements and filings for the [SEC] are

---

[3] Plaintiffs also bring claims under the Securities Act, under which suits "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." 15 U.S.C. § 77v(a). "If there is proper venue under [either the Securities or Exchange Acts], venue is also proper for a claim arising under [the other]." *Zorn v. Anderson*, 263 F. Supp. 745, 747 (S.D.N.Y. 1966). The Complaint alleges proper venue under the Exchange Act, and therefore, implicitly, proper venue, too, under the Securities Act.

The Court notes that plaintiffs separately claimed that venue was proper in this District under 28 U.S.C. § 1391(b), the general venue statute. However, "[v]enue of claims brought under the Exchange Act are governed exclusively by section 27, not by the general venue provisions of 28 U.S.C. § 1391." *Blass v. Capital Int'l Sec. Grp.*, No. 99 Civ. 5738 (FB), 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001).

issued from its Seattle office." *Id.* ¶ 9.  Because the Complaint's core claim is that these statements and filings were actionably false or misleading, CTI's issuances of them from Seattle were acts that support venue in that District.  Therefore, venue in the Western District of Washington is proper and plaintiffs could have brought their claims there.

Having found the threshold met, the Court proceeds to balance the various factors to be considered under § 1404(a).  These, the Court finds, overwhelmingly support transferring this case to the Western District of Washington.  "While there is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered, such transfers to the issuer's home district are routine as a practical matter." *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 61 (RJH), 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006) (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (collecting cases)) (internal quotation marks omitted).

In this case, the Western District of Washington is the more convenient district for the likely witnesses in this case.  These include CTI's employees, officers, and directors, many or most of whom work at the Company's headquarters in Seattle and live in Washington, Bianco Decl. ¶¶ 7–8, 11–12, and who are subject to that District's, but not this Court's, subpoena power, *see* Fed. R. Civ. P. 45.  It is also the more convenient district for the parties,[4] who are already engaged in federal litigation in a parallel case in that District; thus transfer will promote trial efficiency and the interests of justice.  *See APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) ("It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer.").  CTI also maintains its

---

[4] Of the defendants, only former directors Karen Ignagni and Mary O. Mundinger reside in New York, while the rest maintain residences in Washington.  Bianco Decl. ¶ 7.  The Complaint does not reveal plaintiffs' residences.

business records in its Seattle headquarters, Bianco Decl. ¶ 9, and because CTI issued its SEC filings from Seattle, that city is the locus of the operative facts. *Erickson v. Corinthian Colleges, Inc.*, No. 13 Civ. 4308 (PKC), 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013) ("The locus of operative events in a securities action is where the alleged misrepresentations were made. In a securities lawsuit, the alleged misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." (citations, internal quotation marks, and alternation omitted)).

The only factor that counsels, at all, against transfer is the deference given to plaintiffs' decision to bring suit in this District. But that consideration carries limited weight in this case because "the weight accorded plaintiff's choice of forum diminishes where the operative facts lack a meaningful connection to the chosen forum" and in the context of "a stockholder class action, where members of the class are dispersed throughout the nation." *Id.* at *2 (citations and internal quotation marks omitted) (finding connection to the Southern District of New York "minimal" where alleged misstatements were issued from California and company shares traded on NASDAQ). Moreover, no plaintiff here opposes the motion to transfer.

On the whole, therefore, the balance of factors decidedly favors transfer to the Western District of Washington.

## CONCLUSION

For the reasons stated, the Court finds, in its discretion, that the convenience of the parties and witnesses, in the interest of justice, favors transfer to the Western District of Washington.[5] Defendants' motion to transfer is therefore granted. The Court denies all

---

[5] The Court does not reach defendants' alternative argument that the Southern District of New York is an improper venue for the present action. Def. Br. 3–5.

movants' motions for appointment as lead plaintiffs, and for the appointment of their counsel as lead counsel, without prejudice to their renewal before the transferee court.

The Clerk of Court is directed to close the motions pending at docket numbers 5, 8, 11, 14, 17, 23, and 35, and to transfer this case to the Western District of Washington.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 19, 2016
        New York, New York

8